UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALIN DRAGIOU and
MONIQUE DRAGOIU,

        Plaintiffs,                     Case Number 10-11896
                                             Honorable David M. Lawson
v.                                         Magistrate Judge Mona K. Majzoub

UNITED STATES OF AMERICA,

        Defendant.
_____ /

**OPINION AND ORDER ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, OVERRULING PLAINTIFFS' OBJECTIONS, SUSTAINING DEFENDANT'S OBJECTIONS, GRANTING DEFENDANT'S MOTION TO DISMISS, AND DISMISSING CASE**

The plaintiffs have filed a complaint, which they have amended three times, alleging that they purchased a house from the Department of Housing and Urban Development (HUD) that had prior flooding and mold problems, which were not disclosed by the seller. They have sued the United States, which, as one might anticipate, has asserted the defense of sovereign immunity. The case was referred to Magistrate Judge Mona K. Majzoub to conduct all pretrial proceedings. The United States filed a motion to dismiss, and after full briefing, Judge Majzoub filed a report recommending that the motion be granted. She found that sovereign immunity barred the lawsuit, and none of the statutory exceptions to that doctrine applied, although she rejected or did not address certain aspects of the government's arguments. Both sides filed timely objections, and the matter is before the Court for fresh review. The Court has considered the report and recommendation, the motion to dismiss, the response, and all related papers in light of the objections filed and now concludes that the doctrine of sovereign immunity bars the plaintiffs' lawsuit. Therefore, the Court will grant the motion to dismiss.

I.

Plaintiff Alin Dragoiu purchased property at 2361 Marwood, Waterford, Michigan from HUD in October 2004. Although the property was sold "as is," and the purchase documents are rife with warnings, disclaimers, and advice to the purchaser to obtain her own inspections, the plaintiff alleges that the house was defective due to prior flooding from a broker water pipe, about which HUD was aware and did not disclose to her. She says the water damage to the house required extensive repairs and debris removal that occurred before the plaintiff made her offer on the property. That water damage, the plaintiff alleges, caused the growth of toxic mold, which the plaintiff has attempted to eradicate, at great expense.

According to the papers attached to the government's motion to dismiss, HUD acquired the property on July 26, 2004. The next day, HUD assigned the property to Michaelson, Connor, and Boul ("MCB") for management, marketing, and disposition. MCB selected the listing broker, Future Real Estate ("Future"). Future listed the property on August 6, 2004 with the notation that it would be sold "as is," HUD would not make any repairs, and neither MCB nor Future would "make[ any] warranty as to the existence of mold in this prop[erty]"

On August 29, 2004, plaintiff Alin Dragoiu signed a purchase agreement and a "Radon Gas and Mold Notice Release Agreement." The release stated again that the property was sold "as is," and it acknowledged that no one on behalf of the seller had made any representation about the condition of the property. However, the release also contained the following representation:

> The Secretary of the U.S. Department of Housing and Urban Development, his/her officers, employees, agents, successors and assignee (the "Seller") and Michaelson, Connor & Boul, Inc. an independent management and marketing contractor ("M&M Contractor") to the Seller, have no knowledge of . . . mold in, on, or around the

> Property other than what may have already been described on the web site of the Seller or M & M Contractor or otherwise made available to Purchaser by the Seller or M & M Contractor.

Def.'s Mot. to Dismiss at 3-4 (citing Walker Declaration at ¶¶ 30-33; Ex. V).

On August 30, 2004, MCB tentatively accepted the bid of $138,000 from the plaintiffs, issued the Owner Occupant Bid Acceptance Notification to the plaintiffs' broker, and forwarded the sales contract package.

On September 10, 2004, MCB (on behalf of HUD) and Alin and Monique Dragoiu, as joint tenants with right of survivorship, entered into an "as is" sales contract for the property. On September 17, 2004, the plaintiffs hired their own home inspector. According to the inspector's bill, the plaintiffs' home inspection included a written report and a mold sample. The property's closing was on October 21, 2004.

The plaintiffs allege that they later learned that the defendant left the house flooded for months and then concealed the damage by removing the water and other debris prior to the sale. HUD stated it did not receive any complaints regarding the property from the plaintiffs from the closing date through September 2008.

Plaintiff Monique Dragoiu states that she sent a letter of intent to HUD on February 25, 2009, outlining a proposed settlement for $500,000 in damages and requiring Freddie Mac to repurchase the house. On March 29, 2009, attorney Christopher Bowman sent a letter to HUD seeking settlement for $200,000. On May 14, 2009, the Plaintiffs filed the Form 95 Administrative Claim.

On June 25, 2009, the plaintiffs filed a complaint in this Court, which was dismissed because the plaintiffs failed to exhaust administrative remedies. The Court found that the plaintiffs did not

wait for either a denial of the claim by HUD or the six-month period after presentment that would constitute denial so they could file a civil action under the Federal Tort Claims Act (FTCA).

On May 10, 2010, the plaintiffs filed the present action acting *pro se*, initially naming HUD as the defendant. The complaint was amended later to substitute the United States as the defendant. On May 19, 2011, the plaintiffs filed a second amended complaint alleging that the United States was liable under the FTCA based on nuisance and trespass, as well as violations of the Fifth and Fourteenth Amendments. The United States responded with a motion to dismiss. The plaintiffs then obtained counsel, who filed a third amended complaint on November 30, 2011. As the case now stands, the plaintiffs allege counts entitled Negligence, Revocation, and Declaratory Judgment. On February 14, 2012, the defendant moved to dismiss the third amended complaint for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

II.

The government raised several grounds in support of its position that the case should be dismissed. First, it argued that the complaint alleged a contractual dispute that was governed by the Tucker Act, and therefore the Court of Federal Claims, not the district court, had exclusive jurisdiction. Second, if the claims are tort-based, the government contended that sovereign immunity applied, and the FTCA did not amount to the government's consent to be sued because this case falls within the misrepresentation exception. Third, the plaintiffs did not present their claim within the two-year limit required by the FTCA, so it is barred. Fourth, HUD delegated its authority to a contractor, and the conduct about which the plaintiffs complain was not HUD's. Fifth, the FTCA's discretionary function exception leaves this case within the sovereign immunity

doctrine. And, finally, the counts labeled "revocation" and "declaratory judgment" do not state causes of action. The magistrate judge filed a report in which she agreed that the Tucker Act and misrepresentation exception arguments had merit, a fact question existed on whether the plaintiffs presented their administrative claim on time, and counts II and III of the third amended complaint failed to state a claim. The magistrate judge did not address the delegation or discretionary function arguments. She recommended that the case be dismissed.

The plaintiffs filed timely objections, arguing that the case is not based on contract, so the Tucker Act does not apply; and the negligence count is not based on any sort of misrepresentation, so that exception in the FTCA does not apply, either. The government objects on the ground that there was no timely presentment of the claim under the FTCA, and its unaddressed discretionary function argument has merit.

### III.

The plaintiffs quite obviously have sued the United States. However, the doctrine of sovereign immunity shields the government from lawsuits. *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 259 (1999). It is well established that a claim against the United States is barred absent a waiver of sovereign immunity, "'and the terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). A waiver of immunity cannot be implied; it must be "unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (holding that federal courts have no subject matter jurisdiction to hear a claim against the United States or one of its agencies absent a clear waiver of sovereign immunity).

Sovereign immunity is a jurisdictional doctrine. Unless the plaintiff can show a waiver of sovereign immunity, a complaint brought against the United States must be dismissed for lack of subject mater jurisdiction. *Milligan v. United States*, 670 F.3d 686, 692 (6th Cir. 2012). To show such waiver, a plaintiff must identify a specific statutory provision that waives the government's sovereign immunity. *United States v. Sherwood*, 312 U.S. 584, 590 (1941); *Lane v. Pena*, 518 U.S. 187, 192 (1996) (finding that a waiver of sovereign immunity by the federal government will not be implied, but rather must be "unequivocally expressed" in statutory text); *see also United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992). Even when Congress enacts a statute that waives federal sovereign immunity in some circumstances, such a waiver must be construed "strictly in favor of the sovereign" and "not enlarge the waiver 'beyond what the language requires.'" *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986) (citation omitted); *see Lane v. Pena*, 518 U.S. at 192; *see also United States v. Williams*, 514 U.S. 527, 531 (1995) (when confronted with a purported waiver of federal sovereign immunity, the court will "constru[e] ambiguities in favor of immunity").

A.

The magistrate judge believed that the plaintiffs' complaint may have raised a breach of contract claim, a notion that the plaintiffs vehemently disavow. The United States has waived sovereign immunity for certain contract claims in the Tucker Act. 28 U.S.C. §§ 1346(a)(2); 1491(a)(1). But the plaintiffs do not rely on that legislation as a source of waiver, nor could they. The plaintiffs value their claim at $685,000, and the Tucker Act allocates jurisdiction over claims exceeding $10,000 exclusively to the United States Court of Federal Claims. 28 U.S.C. § 1491; *A.E. Finley & Assoc., Inc. v. United States*, 898 F.2d 1165, 1167 (6th Cir. 1990).

The plaintiffs object to the magistrate judge's determination that the third amended complaint included a contract count. That suggestion by the magistrate judge has no bearing on the outcome of the motion to dismiss, however, because the plaintiffs do not purport to press a contract claim, and the Tucker Act therefore cannot help them sue the government, regardless of their choice of court. Certainly, the district court has no jurisdiction over such a contract claim. *United States v. Hohri*, 482 U.S. 64, 66 n.1 (1987).

B.

The plaintiffs have made clear that they have invoked the FTCA as a basis for jurisdiction and waiver of sovereign immunity. The FTCA provides a limited waiver of sovereign immunity and subjects the United States to liability for certain "tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The district court has jurisdiction over "civil actions on claims against the United States, for money damages . . . for . . . loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). But the FTCA contains several qualifications and exceptions, the application of which are the central focus of the motion to dismiss.

1.

The FTCA contains two filing deadlines. First, a claimant must "present[] [her tort claim] to the appropriate federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). Second, the claimant must file her lawsuit within six months of the government agency's denial of the claim. *Ibid.* The government in this case contends that plaintiff missed the first deadline. The magistrate judge believed that the plaintiffs offered evidence sufficient to create a legitimate fact question whether the presentment requirement was satisfied. The Court disagrees.

The magistrate judge relied on an affidavit submitted by the plaintiffs from their former attorney, Steven Martin, which states that Martin mailed a letter to HUD on the plaintiffs' behalf on February 23, 2005, four months after the plaintiffs took ownership of the subject property, addressing issues of toxic mold in the home. Martin's affidavit did not include a copy of the letter he sent, nor did it indicate that he made a demand for a certain sum. The government submitted the declaration of Ann D'Arpino, an attorney familiar with the records of administrative tort claims filed with HUD, stating that a search of HUD's records showed that HUD did not receive any correspondence from Mr. Martin.

The plaintiffs' evidence does not fulfill the presentment requirement of section 2401(b). To satisfy the presentment requirement the plaintiff must submit proof of a written notice that contains (1) a description of the claim sufficient to enable the appropriate agency to investigate and (2) a value placed on the claim. *Glarner v. United States*, 30 F.3d 697, 700 (6th Cir. 1994) (citing *Sellers v. United States*, 870 F.2d 1098, 1101 (6th Cir.1989); *Douglas v. United States*, 658 F.2d 445, 447 (6th Cir.1981)). Federal regulations state that a claim is "presented" only when the agency "receives" a completed Standard Form 95 "or other written notification of an incident, accompanied by a claim for money damages in a sum certain." 28 CFR § 14.2(a). "The mere mailing of

documents does not constitute presentment within the meaning of 28 U.S.C. § 2401(b)." *Willis v. United States*, No. 91-4111, 1992 WL 180181 (6th Cir. July 29, 1992) (citing *Bailey v. United States*, 642 F.2d 344, 347 (9th Cir.1981)); *Hoffman v. United States*, 398 F. Supp. 530, 540 (E.D. Mich. 1975) ("[T]he regulation requires receipt, not mere mailing."); *see also Scott v. Johnson*, No. 07-11560, 2007 WL 4219383 (E.D. Mich. Nov. 29, 2007) ("[I]f a claimant mails a notice and it is not received by the agency there is no presentment.") (citing *Bailey*, 642 F.2d at 346–47); *cf. Baldwin v. Fidelity Phenix Fire Ins. Co. of New York*, 260 F.2d 951, 954 (6th Cir. 1958) ("It is not, therefore the sending, but the receipt, of a letter that will constitute notice.").

Courts recognize an evidentiary presumption that allows the inference that a letter was actually received if the proponent proves the predicate facts that the letter was properly addressed and deposited in a postal depository with sufficient prepaid postage attached. *See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557-58 (6th Cir. 2000). That presumption does not shift the ultimate burden of proof, however, and it dissipates when the opponent offers evidence that it did not actually receive the letter. Fed. R. Evid. 301; *In re Yoder Co.*, 758 F.2d 1114, 1118 (6th Cir. 1985) (observing that "[t]estimony of non-receipt, standing alone, would be sufficient to support a finding of non-receipt; such testimony is therefore sufficient to rebut the presumption of receipt").

The plaintiffs have not presented evidence of the predicate facts that would allow them the benefit of the presumption, and the government has rebutted it in any event. Therefore, there is no evidence on this record that the plaintiffs presented their claim to HUD within the two-year period as required by section 2401(b). Moreover, Martin's affidavit does not show that he made a claim for a sum certain. The plaintiffs contend that they sent a letter of their own to Martin stating that

-9-

they had suffered $40,000 in damages due to the cost of removing mold and repairing the home. But there is no evidence that Martin passed that along to HUD, or that he ever made a demand in a certain amount in his own correspondence to HUD.

The February 2005 letter did not constitute presentment of a claim within the meaning of section 2401(b). The plaintiffs did submit a completed Standard Form 95 to HUD on May 14, 2009, but that was well outside the two-year time limit.

Because the plaintiffs did not satisfy the notification requirement of section 2401(b), their claim under the FTCA cannot proceed.

2.

The FTCA also contains several exceptions. One states that "[t]he provisions of [the FTCA] and section 1346(b) of this title shall not apply to . . . [a]ny claim arising out of . . . misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). The defendant argues that the plaintiffs' claim in count I of the third amended complaint falls squarely within section 2680(h)'s exception and is barred by sovereign immunity because it depends on a false or incorrect statement made by HUD. The plaintiffs insist that their claim is not based on any misrepresentation, but is based on negligence.

Two cases decided by the Supreme Court have defined the territory covered by section 2680(h): *United States v. Neustadt*, 366 U.S. 696 (1961) and *Block v. Neal*, 460 U.S. 289 (1983).

*Neustadt* involved a claim by a home purchaser who said he was induced to pay more than fair market value for a house based on an inaccurate Federal Housing Authority (FHA) inspection and appraisal. The 16-year-old house was inspected by FHA inspectors and an appraisal was issued

based on the inspection. About a year after the closing, the Neustadts noticed cracks in the walls and ceiling, which later were discovered to be caused by substrate settling that the FHA inspector missed. They sued the federal government alleging that the FHA negligently inspected and appraised the property for mortgage insurance purposes, they were justified in relying on the inspection and appraisal, and they would not have bought the home but for the FHA's negligence. The Court held that the Neustadts' claim was barred by section 2680(h). The Court interpreted the term "misrepresentation in section 2680(h) to mean negligent misrepresentation, which . . . Congress had in mind when it placed the word 'misrepresentation' before the word 'deceit' in s[ection] 2680(h)." 366 U.S. at 706-07. The essence of the plaintiffs' claim in that case was not so much the negligent inspection, but the inaccurate communication of the home's value to the plaintiffs and their reliance on that information. Dismissing the idea that a negligent inspection was at the root of the claim, the Court quoted approvingly the instruction that courts "'must then look beyond the literal meaning of the language to ascertain the real cause of complaint.'" *Id.* at 703 (quoting *Hall v. United States*, 274 F.2d 69, 71 (10th Cir. 1959)). The Court then acknowledged that government agents breach a common law duty when misinformation is communicated to people who rely on it; but the government is immune from such conduct under section 2680(h). *Id.* at 710-11 (stating: "In practically all such instances, it may be said that the Government owes a 'specific duty' to obtain and communicate information carefully, less the intended recipient be misled to his financial harm. While we do not condone carelessness by government employees in gathering and promulgating such information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability."). The Court held that sovereign immunity barred the claim against the government.

*Block v. Neal* also involved a disgruntled home purchaser, but the Court distinguished *Neustadt* based on the plaintiffs' cause of action. In that case, Neal obtained a loan from the Farmers Home Administration (FmHA) for the construction of a pre-fabricated house. Neal's agreement with the building contractor required the building to conform to the FmHA's approved plans, and it gave the FmHA the right to inspect and test materials and workmanship and reject defective work. An FmHA official inspected the house three times during different phases of construction, and her reports did not note any discrepancies. After the final inspection, the FmHA official issued a signed report that the house conformed with the FmHA's approved specifications; but after Neal moved in, she discovered a number of defects with the house, some of which involved deviations from the FmHA-approved plans. When the FmHA refused Neal's request to pay for repairs, she sued for breach of contract, negligence in performing the inspections and supervising construction, and "detrimental reliance." The district court dismissed the complaint on the grounds that the FmHA had no contractual or statutory duty to supervise construction because the inspection regulations were intended to benefit only the government's security interest in the dwelling, and Neal failed to state a tort claim under Tennessee law. The Sixth Circuit agreed that no contractual duty existed but reversed because Neal had stated a claim for negligent performance of a voluntary undertaking. The Supreme Court granted certiorari to determine whether Neal's claim arose out of misrepresentation and therefore was barred by section 2680(h).

The Court affirmed the Sixth Circuit's decision and distinguished *Neustadt*. The Court characterized the claim in *Neustadt* as one of misrepresentation because the plaintiffs there alleged that they were "misled by a 'Statement of FHA Appraisal' prepared by the Government." *Block*, 460 U.S. at 296. As the Court saw it, "Neustadt alleged no injury that he would have suffered

independently of his reliance on the erroneous appraisal." *Ibid.* Without that misrepresentation, presumably Neustadt would not have purchased the house for the price he paid. Therefore, "[b]ecause the alleged conduct that was the basis of his negligence claim was in essence a negligent misrepresentation, [his] action was barred under the 'misrepresentation' exception." *Id.* at 296-97. In contrast, the Court found that the core of Neal's claim was not a representation of the house's condition, but the faulty inspections performed by the government inspector. Although there was no statutory duty that ran from the inspector to the home buyer, the Court credited the lower court's finding that "to prevail under the [state common law] Good Samaritan doctrine, Neal must show that FmHA officials voluntarily undertook to supervise construction of her house; that the officials failed to use due care in carrying out their supervisory activity; and that she suffered some pecuniary injury proximately caused by FmHA's failure to use due care." *Ibid.* Because the claim did not rely on government misstatements, the Court reasoned, the misrepresentation exception to the sovereign immunity waiver in section 2680(h) did not preclude the action. The Supreme Court explained: "Neither the language nor history of the [Federal Tort Claims] Act suggest that when one aspect of the Government's conduct is not actionable under the 'misrepresentation' exception, a claimant is barred from pursuing a distinct claim arising out of other aspects of the Government's conduct." *Id.* at 298.

Following *Neustadt* and *Neal*, circuit courts have held that section 2680(h) bars any claim in which the government's misstatements, either negligently or intentionally made, were "essential" to the plaintiff's claims. *See JBP Acquisitions, LP v. United States ex rel. FDIC*, 224 F.3d 1260, 1264 (11th Cir. 2000) ("The test in applying the misrepresentation exception is whether the essence of the claim involves the government's failure to use due care in obtaining and communicating

information."); *Dorking Genetics v. United States*, 76 F.3d 1261, 1264-65 (2d Cir. 1996) ("In determining the applicability of the § 2680(h) exception, a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts. . . . Recovery is not barred . . . if the plaintiff alleges the breach of a cognizable duty owed to him which is distinct from any duty to use due care in communicating information." (internal quotations and citations omitted)); *Mt. Homes, Inc. v. United States*, 912 F.2d 352, 355 (9th Cir. 1990) (holding that plaintiff's claim for failure to communicate correct sales tax information was in essence one for negligent misrepresentation); *JM Mech. Corp. v. United States by U.S. Dep't of Housing and Urban Dev.*, 716 F.2d 190 (3d Cir. 1983); *Gaudet v. United States*, 517 F.2d 1034, 1035 (5th Cir. 1975) ("It is the substance of the claim and not the language used in stating it which controls.").

The plaintiffs have styled their first count as a negligence claim. However, the centerpiece of the government's negligence, as alleged in the complaint, is its failure to remove a statement in a disclaimer "[a]ffirmatively stating that HUD had no knowledge of any issues relating to mold or related claims." Third Amend. Compl. ¶ 43(c). The plaintiffs also allege that the defendant failed to: "inform Plaintiffs of the water infiltration problem and subsequent finding of mold and mold related issues"; "inform Plaintiffs through the website or other means of the water infiltration problem and subsequent finding of mold, structural issues, and mold related issues"; "provide notice to Plaintiffs of the remediation work performed by HUD and/or its contractors prior to the Property being put up for sale, while it was being put up for sale, and prior to the closing of the Property"; and "provide notice to Plaintiffs that their contractor informed them that the Property had significant mold or potential mold problems." *Id.* ¶¶ 43(a), (b), (d), (f).

-14-

The core of the plaintiffs' "negligence" claim, therefore, is that the defendant withheld or concealed information about water damage and mold. Whether cast as a failure to remove incorrect statements, or conduct that concealed a material fact, the essence of the claim is the communication of misinformation. The claim is governed by *Neustadt*, and it falls squarely within the misrepresentation exception in the FTCA.

3.

Another exception to the waiver of sovereign immunity are claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government" 28 U.S.C. § 2680(h). The government argues that HUD's act of selling the property was discretionary. It points out that section 204(g) of the National Housing Act (NHA), 12 U.S.C. § 1710(g) authorizes the Secretary of HUD to dispose of properties acquired by the Federal Housing Administration (FHA), a component agency of HUD, through foreclosure of an insured or Secretary-held mortgage or loan under the NHA. Under that authority, the Secretary established the Single Family Property Disposition Program (SFPDP). In selling individual properties under the SFPDP, "HUD may, in its discretion, on a case-by-case basis or as a regular course of business, choose from among [several] methods of sale[.]" 24 C.F.R. § 291.90. The government states that one of the methods of sale within HUD's discretionary authority is the "competitive sale[] of individual properties to individual buyers." 24 C.F.R. § 291.90(b). It notes that the regulation governing competitive sales of individual properties to individual buyers further permits HUD to "sell the properties on an 'as-is' basis, without repairs or warranties." 24 C.F.R. § 291.205. The government also argues that HUD had the discretion to refer the sale to its contractor without being held liable for actions stemming from the contractor.

The plaintiffs take a narrower view, contending that once HUD choose the method of sale, HUD's subsequent actions were mandated by statute, and therefore no discretion was required, or even allowed.

The Sixth Circuit recently concluded that courts must view broadly the government activity when applying the discretionary function exception. *Kohl v. United States*, 699 F.3d 935, 941-42 (6th Cir. 2012). The court prescribed a two-stage inquiry. First, the court must determine "whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice." *Id.* at 940 (quoting *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997)). If not, the court next must "evaluate 'whether the conduct is "of the kind that the discretionary function exception was designed to shield"' from liability." *Ibid.* But even before that inquiry begins, "the crucial first step is to determine exactly what conduct is at issue." *Ibid.* (quoting *Rosebush*, 119 F.3d at 442). In characterizing the government activity, the *Kohl* court directed a view through a macro lens, declaring that "'[i]t is the governing administrative policy,' rather than the negligence of a particular employee, 'that determines whether certain conduct is mandatory for purposes of the discretionary function exception.'" *Id.* at 942 (quoting *Autery v. United States*, 992 F.2d 1523, 1528 (11th Cir. 1993)).

Following that lead, the conduct here must be viewed as the public sale of foreclosed properties under the SFPDP. When so characterized, it is an easy step to conclude that HUD's choice of how to market and sell the properties is a discretionary act. The Court finds, therefore, that the challenged conduct is "'of the kind that the discretionary function exception was designed to shield'" from liability. *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991) (quoting *Berkovitz*

*v. United States*, 486 U.S. 531, 536 (1988). The plaintiffs' claim therefore falls within the exception to the sovereign immunity waiver under 28 U.S.C. § 2680(h).

4.

Finally, it is well established that the United States is liable for the torts of its employees, but not the torts of its contractors. 28 U.S.C. § 2671; *United States v. Orleans*, 425 U.S. 807, 813-16 (1979). The FTCA waives sovereign immunity only for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The term "employees" includes officers or employees of any federal agency, "but does not include any contractor with the United States." 28 U.S.C. § 2671. The principle that the United States is not liable for the torts of independent contractors applies to HUD's contracts with real estate asset management companies.

To sell its properties, HUD relies heavily on contractors, not employees. Handbook 4310.5, Ch. 1 §§1-7. HUD's Property Disposition Handbook provides: "Upon acquisition, properties are assigned to property managers, i.e., Real Estate Asset Managers (REAMS)." *Id.* § 1-4(A)(3). "Real Estate Asset Managers (REAMs) are responsible for providing day-to-day property management functions and ensuring that properties are maintained in a clean and presentable condition throughout HUD's ownership." *Id.* § 1-5(B)(5). In addition REAMs' responsibilities include duties to "[i]nspect properties, remove imminent hazards and prepare applicable reports. Secure, preserve, and protect property." *Id.* §§ 3-2, 3-3. The very purpose of a HUD property management contract is to turn over the day-to-day management, rehabilitation, and supervision of certain properties to contractors.

In this case, the contractor with whom HUD contracted to manage and market the plaintiffs' property was an independent contractor. Several years before the sale of the property to the plaintiffs, HUD entered into a Management and Marketing Services Contract ("MCB Contract") with MCB. Under that contract, MCB was responsible for reviewing and approving preservation and protection requests from insured lenders, inspecting properties, and taking all actions necessary to preserve, protect, and maintain each property in a presentable condition at all times. Walker Declaration ¶ 8 & Exhibit A, § C-2, ¶¶ V(A)(1)-(3), V(B)(5); § C-6. HUD acquired the property on July 26, 2004 and assigned it to MCB for management, marketing, and disposition. Walker Declaration at ¶¶ 15, 16. On July 28, 2004, MCB submitted a work order request to a company called ASD America to preform various tasks to the property. Walker Declaration ¶ 17. Upon receipt of a Uniform Residential Appraisal Report, which noted that the property had general health and safety deficiencies preventing the property from meeting the FHA's minimum property standards, MCB determined a list price of $130,000 for the property on August 6, 2004 and selected Future as a listing broker. Walker Declaration ¶ 18, 19; Exs. I, J. Plaintiff Alin Dragoiu submitted a bid on August 29, 2004, and MCB provisionally accepted this bid on August 30, 2004. Walker Declaration ¶ 23; Exs. Q, R. MCB then handled all the arrangements concerning the closing of the sale on the property. Walker Declaration ¶ 36-38; Exs. X, Y, Z. Throughout its assignment, MCB did not seek instructions or approval by HUD on matters relating to the property. Walker Declaration ¶ 39.

HUD relied entirely upon its contractor, MCB, to manage, market, and dispose of the plaintiffs' property. If there was any negligence involved in the sale of the property, it was MCB's negligence. The United States is not liable for its independent contractor's actions.

C.

Count II of the third amended complaint asks the Court to issue an order permitting the plaintiffs to revoke the sale transaction and requiring the defendant to satisfy the mortgage and second mortgage on the property and compensate the plaintiffs for the money they have spent to correct the deficiencies and improve the property. Count III seeks a declaratory judgment essentially compelling the same action by the defendant. Those counts request recision of a contract; they are not viable claims for relief under the FTCA, which is limited to money damages. 28 U.S.C. § 1346(b). The FTCA waives sovereign immunity only for "money damages." Where the plaintiffs seek other types of relief, the Court lacks jurisdiction to award it. *Talbert v. United States*, 932 F.2d 1064, 1065-66 (4th Cir. 1991). Therefore, Counts II and III must be dismissed for failure to state a claim.

IV.

The Court concludes that the United States has not waived sovereign immunity for the claims framed by the plaintiffs in their third amended complaint. Therefore, the Court lacks subject matter jurisdiction over the lawsuit.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #107] is **ADOPTED IN PART**.

It is further **ORDERED** that the plaintiff's objections to the report and recommendation [dkt #109] are **OVERRULED** and the defendant's objections [dkt #108] are **SUSTAINED**.

It is further **ORDERED** that the defendant's motion to dismiss [dkt #94] is **GRANTED**.

It is further **ORDERED** that the complaint and all the amended complaints are **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  January 9, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 9, 2013.

s/Shawntel Jackson
SHAWNTEL JACKSON

---